UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOUGLAS ELLIMAN LLC,<br><br>                    Plaintiff,<br><br>-against-<br><br>FIREFLY ENTERTAINMENT INC.,<br>13 MANAGEMENT LLC, and<br>EURO TRIBECA LLC,<br><br>                    Defendants. | Case No. 1:18-cv-01381-JMF<br><br>Hon. Jesse M. Furman<br><br><br><br>Oral Argument Requested |

# REPLY MEMORANDUM OF LAW IN FURTHER
# SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**VENABLE LLP**

J. Douglas Baldridge
 600 Massachusetts Avenue,
 Washington, DC 20001
 JBaldridge@Venable.com
 Tel: 202.344.4703

John C. Vazquez
 1270 Avenue of the Americas,
 New York, NY 10012
 JVazquez@Venable.com
 Tel: 212.370.6293

*Attorneys for Defendants Firefly Entertainment Inc., 13 Management LLC, and Euro Tribeca LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.   Douglas Elliman Has Not Pled the Existence of a
     Special Contract ................................................................................................................. 3

II.  Douglas Elliman Cannot Rely on Industry Custom
     and Practice to Imply a Special Agreement ............................................................. 5

III. Douglas Elliman Fails to State a Claim for
     Tortious Interference with Contract ........................................................................... 6

CONCLUSION ................................................................................................................................ 7

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Bennett v. Atomic Prod. Corp.*,
    132 A.D.3d 928 (1st Dep't 2015) ..................................................................................6

*Bracha NY, LLC v. Moncler USA Retail LLC*,
    2017 N.Y. Slip Op. 30996(U), 2017 WL 1955275 (Sup. Ct. N.Y. Cnty 2017) ...........................................................................................................................4

*Cooper Square Realty, Inc. v. A.R.S. Management, Ltd.*,
    181 A.D.2d 551 (1st Dep't 1992) ...............................................................................3, 4

*Discover Grp., Inc. v. Lexmark Ina, Inc.*,
    333 F. Supp. 2d 78 (E.D.N.Y. 2004) ............................................................................7

*Douglas Elliman v. Corcoran*,
    93 A.D.3d at 540 (1st Dep't 2012) ...............................................................................6

*Futterman Org., Inc. v. Bridgemarket Assocs. L.P.*,
    278 A.D.2d 105 (1st Dep't 2000) .................................................................................5

*Gronich & Co. v. 649 Broadway Equities Co.*,
    169 A.D.2d 600 (1st Dep't 1991) .................................................................................6

*Hirschfeld Props. v. Juliano*,
    3 A.D.3d 399 (1st Dep't 2004) ..................................................................................3, 4

*Indus. & Commercial Realty Assocs. Co. v. Great Atl. & Pac. Tea Co.*,
    68 A.D.2d 853 (1st Dep't 1979) ................................................................................4, 5

*Kronos, Inc. v. AVX Corp.*,
    612 N.E.2d 289 (N.Y. 1993) .........................................................................................6

*Parkway Group Ltd. v. Modell's Sporting Goods*,
    254 A.D.2d 338 (2d Dep't 1998) ..........................................................................3, 4, 5

*Webster's Red Seal Publishing v. Gilbertson World-Wide Publishing*,
    67 A.D.2d 339 (1st Dep't 1979) ...................................................................................6

*Weiner v. McGraw-Hill, Inc.*,
    57 N.Y.2d 458 (1982) ...................................................................................................7

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ...........................................................................1

Defendants Firefly Entertainment Inc., 13 Management LLC, and Euro Tribeca LLC ("Defendants") respectfully submit this reply in further support of their motion to dismiss the Complaint filed by Douglas Elliman LLC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

As Defendants set forth in their Memorandum of Law in support of their motion to dismiss, Douglas Elliman's claims for breach of contract and tortious interference with contract both fail as a matter of law, and should be dismissed. Elliman's memorandum in opposition to this motion (Docket No. 16, the "Opposition" or "Opp.") only serves to further illustrate the defects in Elliman's Complaint.

Douglas Elliman's claim, in sum, is that its agent Andrew Azoulay showed Defendants Firefly Entertainment Inc. and 13 Management LLC (collectively "Firefly Entertainment") a property located on Franklin Street in Manhattan, provided some basic information about the property, and made an introduction to the property owner—all of which occurred over the course of about one single week.[1] (Compl. ¶¶ 19-22). Nearly nine months passed, during which time Azoulay had no contact with the Firefly Entertainment or the seller, and Defendant Euro Tribeca LLC allegedly purchased the Franklin Street property for $18 million. (Compl. ¶¶ 23, 24, 31). Despite admittedly having nothing all to do with closing this sale, Elliman claims it is entitled to receive $1.08 million, on the theory that Firefly Entertainment made a "written promise of sole representation regarding the purchase of 153 Franklin Street" that was breached when Euro Tribeca LLC purchased the Franklin Street property. (Compl. ¶¶ 27, 32).

In their moving brief, Defendants demonstrated that there are only two avenues of recovery available to a real estate broker under New York law: the broker may recover if it was the "procuring cause" of the transaction in question; or if it can demonstrate the

---

[1] All alleged facts recited herein are taken from the Complaint ("Compl."), and presumed true only for the purposes of this motion.

1

existence, and breach, of a "special agreement" by which the parties explicitly contracted around the "procuring cause" rule, and agreed that the broker would be compensated on some other basis. (*See* Motion to Dismiss, Dckt. No. 13, pp. 6-8).

In its Opposition Elliman concedes that it was not the "procuring cause," and that "procuring cause is a non-issue . . . ." (Opp. p. 8). Rather, the sole and only basis for Elliman's breach of contract claim is an alleged "written promise of sole representation" from Firefly Entertainment, as Elliman claims that this "exclusive agency promised to the plaintiff real estate broker is a 'special contract.'" (Opp. pp. 4, 9). But a contract requires agreement between the parties as to all material terms, and there are no allegations of the amount or basis that Firefly Entertainment agreed to pay Elliman—or even any allegation of an agreement by Firefly Entertainment to pay Elliman at all. Likewise there are no allegations whatsoever as to what services Elliman was supposed to perform to earn that compensation, nor any terms of duration that would specify how long the alleged period of exclusivity was to last. Each of these is a material term, the absence of which is fatal to Elliman's breach of contract claim.

Elliman attempts to bolster its deficient pleading by arguing that all of these absent terms can be imputed by the court with reference to industry custom. This is not so. The industry custom—and the century old principle of law—is that a broker is not entitled to any fee whatsoever unless it is the "procuring cause" of the transaction. Having conceded that it was not the procuring cause of the transaction at issue, Elliman cannot rely on industry custom to imply a contract. The very purpose of the "special contract" doctrine is to avoid exactly such hijinks, and to prevent unscrupulous brokers from implying contracts from nonspecific communications so as to skirt the procuring cause rule.

Elliman's cause of action for tortious interference, pled against Defendant Euro Tribeca LLC, fails for the same reasons. It is contingent upon the existence of a valid special contract between Elliman and Firefly Entertainment; and because there was no

such contract, there can be no tortious interference. Accordingly, Elliman's complaint should be dismissed in its entirety.

## ARGUMENT

I.   **Douglas Elliman Has Not Pled the Existence of a Special Agreement**

In *Greene v. Hellman*, the New York Court of Appeals held that

> It has long been recognized that a broker, save when he enjoys the benefit of a special agreement to the contrary, does not automatically and without more make out a case for commissions simply because he initially called the property to the attention of the ultimate purchaser. If that were enough, given the enterprise which our competitive society prizes in its brokers and its salesmen, a veritable morass of claims to proprietary rights in their prospects would result.

412 N.E.2d 1301, 1307 (N.Y. 1980) (citations omitted). Elliman's claim here is precisely the sort of mischief-making that the Court of Appeals in *Greene* sought to prevent. Admitting that it was not the procuring cause of the real estate transaction at issue, and therefore would generally be barred from seeking any commission, Elliman attempts to salvage its pleading by arguing it enjoyed a "special agreement" with Firefly Entertainment. (See Opp. p.4). This argument is unavailing.

The single email attached to the Complaint contains none of the material terms required to satisfy the requirement of a "special agreement." And in their moving brief, Defendants cited extensive authority demonstrating that courts routinely dismiss complaints containing far more detailed allegations than are set forth by Elliman. *See e.g., Hirschfeld Props. v. Juliano*, 3 A.D.3d 399, 399 (1st Dep't 2004) (dismissing claim where the parties' writing did "not contemplate payment of plaintiff's commission by defendants, and thus is not a valid real estate brokerage agreement"); *Cooper Square Realty, Inc. v. A.R.S. Management, Ltd.*, 181 A.D.2d 551, 551 (1st Dep't 1992) (dismissing alleged exclusive agency agreement that contained "no objective method or formula . . . for determining a commission"); *Parkway Group Ltd. v. Modell's Sporting*

*Goods*, 254 A.D.2d 338 (2d Dep't 1998) (dismissing claims where alleged exclusive agency agreement "lacked an essential term as to the amount of the commission"); *Indus. & Commercial Realty Assocs. Co. v. Great Atl. & Pac. Tea Co.*, 68 A.D.2d 853, 853 (1st Dep't 1979) (real estate broker did not state a claim where the complaint did not "allege an express, special contract," but merely an "implied promise"); *Bracha NY, LLC v. Moncler USA Retail LLC*, 2017 N.Y. Slip Op. 30996(U), 2017 WL 1955275 at *7 (Sup. Ct. N.Y. Cnty 2017) (no commission owed where the brokerage agreement contained "no financial terms whatsoever").

Elliman's response to this authority is simply to ignore it. *Cooper Square Realty* is the only one of these cases Elliman makes any attempt to distinguish, and that attempt misses the mark: Elliman argues that "the court in *Cooper Square* not only held damages must be pled definitively but also held that such damages can be measured via custom and usage proof" (Opp. p. 5), but this misrepresents the holding in *Cooper Square*. The New York Appellate Division in *Cooper Square* affirmed the dismissal on the pleadings of a complaint alleging an exclusive brokerage agreement because, just as here, the alleged agreement contained "no objective method or formula . . . for determining a commission." 181 A.D.2d at 551. Rather than supporting Elliman's argument that a court can impute a compensation term to an exclusive brokerage agreement, the decision in *Cooper Square* undermines it; for the court found that in the context of an alleged exclusive sales agreement where no fee was stated, the plaintiff cannot rely on custom and usage evidence because there is no "fixed and invariable" industry standard for exclusive sales agreements. *See* 181 A.D.2d at, 551. The same is true here.

Tellingly, Elliman has not cited a single case in which a court actually imputed a compensation term to a "special agreement" of exclusive agency, while *Cooper Square*, *Parkway Group*, *Hirschfield Properties*, *Bracha* and other cases cited in Defendants' moving brief demonstrate that courts routinely refuse to do so.

## II. Douglas Elliman Cannot Rely on Industry Custom and Practice to Imply a Special Agreement

Elliman's Opposition tacitly acknowledges that there was never any express agreement between the parties that Elliman would be paid at all, much less any agreement as to the amount that it would be paid. And, it acknowledges that there was never any agreement as to the term or duration of the alleged contract. As explained immediately above, and in more detail in Defendants' moving brief, the absence of these material terms is fatal to Elliman's claim of a "special agreement." *See Indus. & Commercial Realty Assocs. Co.*, 68 A.D.2d at 853 (to recover, a "plaintiff-broker must establish an express 'special contract' . . . and the terms thereof."); *Parkway Group Ltd.*, 254 A.D.2d at 338 (the amount of compensation is an "essential term" of a special agreement).

Elliman argues that all of these absent terms can be imputed, either through operation of law or by reference to industry custom and practice. This contention is meritless. Elliman does not cite a single case in which a court imputed or supplied a term not explicitly present so as to satisfy the requirement of a "special agreement," and there is a very obvious explanation for this absence of authority: as the New York Court of Appeals explained in *Greene*, the industry custom and practice is that a real estate broker is entitled to nothing unless and until it is the procuring cause of a transaction. *See Greene,* 412 N.E.2d at 1307. This is why a "special agreement" is special—it is an explicit agreement to depart from the standard industry custom and the well-settled law, and to do business on some other, atypical terms. Such an agreement cannot be implied, but must be express and explicit in all its material terms in order to be enforceable. *See, e.g., Futterman Org., Inc. v. Bridgemarket Assocs. L.P.*, 278 A.D.2d 105, 106 (1st Dep't 2000) (granting summary judgment and noting that recovery on a "special agreement" theory requires an express, not implied, contract); *Indus. & Commercial Realty Assocs. Co.*, 68 A.D.2d at 853.

5

The cases that Elliman cites to argue that this Court may imply a contract all involve allegations and claims that are totally irrelevant to the pleading of a "special agreement" by a broker. *Webster's Red Seal Publishing v. Gilbertson World-Wide Publishing*, 67 A.D.2d 339 (1st Dep't 1979), which Elliman cites to argue that "where no time period is fixed in a contract the law may imply a reasonable time" (Opp. p. 11), concerns a dispute over the cover price to be displayed on crossword puzzle books. And while *Gronich & Co. v. 649 Broadway Equities Co.*, 169 A.D.2d 600 (1st Dep't 1991) at least concerns a claim by real estate broker, the broker in that case was, unlike Elliman here, the procuring cause of the transaction. *Id*. at 601. The *Gronich* court found that an implied contract existed because the broker "brought [lessor] and [lessee] together, was active in negotiating essential lease terms, and was in essence, a catalyst for the resulting lease." *Id*. at 601. This holding in no way supports Elliman's argument that this Court may impute a contract here, where Elliman admits that it did not procure the transaction at issue.

### III. Douglas Elliman Fails to State a Claim for Tortious Interference with Contract

In support of their motion to dismiss, Defendants demonstrated that Elliman's claim for tortious interference fails along with its breach of contract claim, because one required element of such a claim is the existence of a valid contract between the plaintiff and a third party. *See Kronos, Inc. v. AVX Corp.,* 612 N.E.2d 289, 292 (N.Y. 1993); *Douglas Elliman v. Corcoran*, 93 A.D.3d at 540 (1st Dep't 2012) (no cause of action for tortious interference where plaintiff broker was not the procuring cause of the ultimate purchase). But even if the single email attached to Elliman's complaint could be construed as a contract, there is no allegation that the parties ever agreed to a term of duration for that contract, and as held in *Conrad v. Golden,* an exclusive real estate agency agreement—like any other agreement without a term of expiration—is terminable at will. *Conrad*, 275 A.D. 946, 946 (2d Dep't 1949); *see also Bennett v. Atomic Prod.*

6

*Corp.*, 132 A.D.3d 928, 929 (1st Dep't 2015) ("contracts containing no definite term of duration are terminable at will."). And "a contract terminable at will cannot be the basis for a tortious interference with contract claim." *Discover Grp., Inc. v. Lexmark Ina, Inc.,* 333 F. Supp. 2d 78, 83-84 (E.D.N.Y. 2004) (internal quotations omitted) (dismissing claim for tortious interference with exclusive sales agency agreement).

Douglas Elliman's Opposition makes no effort to distinguish these cases. Instead, Elliman sites *Weiner v. McGraw-Hill, Inc.*, 57 N.Y.2d 458 (1982), which in turn quotes Corbin on Contracts to hold that where an employment contract is made "for a fixed period of time that is either definite or capable of being determined," that employment relationship is no longer at-will and the employee may not be dismissed without cause. *Id*. at 465. *Weiner* has no relevance whatsoever to the case before this Court, because Elliman's Complaint contains no allegations that the supposed exclusive agency contract contained definite or determinable term of duration. Indeed, Douglas Elliman does not argue otherwise, but instead simply urges this Court to find that the alleged contract should be deemed to have existed for "a reasonable period of time." There is no basis for this Court to do so. Therefore, under the principles of law set forth in *Bennet*, *Conrad*, and *Discover Group*, Elliman's claim for tortious interference is defective and should be dismissed.

## **CONCLUSION**

For more than 100 years, it has been the law of New York that a real estate broker is owed nothing unless they are the procuring cause of a transaction—and Douglas Elliman readily admits that it was not the procuring cause of the purchase here at issue. In order to circumvent this well-established, longstanding principle—which is both the industry standard and a requirement of the law—New York courts require brokers to meet a stringent standard, by demonstrating the express existence of a "special agreement" between the broker and client to depart from the default rule. Douglas Elliman cannot do

so, and it knows it. So instead, Elliman engages in a sleight of hand, asking the Court to look to case law where a broker *was* the procuring cause of a transaction, and to rely upon those cases to impute the existence of a contract here, while ignoring the fact that Elliman *was not* the procuring cause of the transaction for which it seeks a million dollar commission. There is no basis for the Court to do so, and therefore Douglas Elliman's Complaint should be dismissed in its entirety.

Dated: April 3, 2018  
       New York, NY

Respectfully submitted,

   /s/ J. Douglas Baldridge

**VENABLE LLP**

J. Douglas Baldridge  
600 Massachusetts Avenue  
Washington, DC 20001  
JBaldridge@Venable.com  
Tel: 202.344.4703

John C. Vazquez  
1270 Avenue of the Americas,  
24th Floor  
New York, NY 10012  
JVazquez@Venable.com  
Tel: 212-370-6293

*Attorneys for Defendants Firefly Entertainment Inc., 13 Management LLC, and Euro Tribeca LLC*