```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
DOUGLAS ELLIMAN, LLC,                                             :
                                                                  :
                                                                  :
                    Plaintiff,                                    :
                                                                  :            18-CV-1381 (JMF)
            -v-                                                   :
                                                                  :            MEMORANDUM OPINION
FIREFLY ENTERTAINMENT, INC., et al.,                              :                AND ORDER
                                                                  :
                    Defendants.                                   :
                                                                  :
------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Douglas Elliman LLC, a real estate brokerage company, brings claims against Defendants Firefly Entertainment Inc. ("Firefly"), 13 Management LLC, and Euro Tribeca LLC relating to the purchase of a townhouse in Manhattan. As alleged in the Complaint, Firefly and 13 Management LLC, acting on behalf of a celebrity client (the "Celebrity"), contacted a Douglas Elliman agent in December 2016 for assistance in purchasing a particular townhouse in Tribeca. *See* Docket No. 5-1 ("Compl."), ¶ 16. The agent introduced the two companies to a different townhouse in Tribeca — located at 153 Franklin Street — and, over the next month or two, took various steps to facilitate a sale of that property. *See id.* ¶¶ 17, 23. In particular, he "made a detailed showing" of the property; measured the building with a laser device; introduced Defendants to the house's owner; and "obtained the blue prints" for the house, which he then gave them to Defendants. *See id.* ¶¶ 19-22. After February 2017, however, he "received no further substantive contact from defendants." *Id.* ¶ 23. Eight months later, in October 2017, Defendant Euro Tribeca LLC, acting on behalf of the Celebrity, bought the townhouse for $18 million, using — and paying a commission to — a different real estate broker. *See id.* ¶¶ 13, 24,

25. Thereafter, Douglas Elliman brought this suit, alleging a claim for breach of contract against Firefly and 13 Management LLC and a claim for tortious interference with contract against Euro Tribeca LLC and seeking six percent of the purchase price, or $1.08 million, in damages. *See id.* ¶¶ 14, 15. Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint. *See* Docket No. 12.

Critically, Douglas Elliman's two sets of claims — brought under New York law — depend on the existence of a valid contract with Firefly and 13 Management LLC. *See, e.g.*, *Johnson v. Nextel Commc' ns, Inc.*, 660 F.3d 131, 142 (2d Cir. 2011) (breach of contract); *Foster v. Churchill*, 665 N.E.2d 153, 156 (N. Y. 1996) (tortious interference with contract).[1] Under New York contract law, "few principles are better settled . . . than the requirement of definiteness," which states that "if an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract." *Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 136 (2d Cir. 2005) (internal quotation marks and alteration omitted); *see also, e.g.*, *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 95 (2d Cir. 2007) ("[A] mere agreement to agree, in which a material term is left for future negotiations, is unenforceable."). In the case of compensation, a term qualifies as insufficiently definite "where

---

[1] Douglas Elliman does not allege any quasi-contract claims in its Complaint and appears to disavow any such claims in its opposition to Defendants' motion. *See* Docket No. 16 ("Pl.'s Mem."), at 8. In any event, any quasi-contract claim would fail because it would require proof that Douglas Elliman was "the procuring cause of the sale." *Parker Realty Grp., Inc. v. Petigny*, 929 N.E.3d 864, 866 (N.Y. 2010); *accord Hirschfeld Props., Inc. v. Juliano*, 3 A.D.3d 399, 399 (1st Dep't 2004). A broker "does not automatically and without more make out a case for commissions simply because he initially called the property to the attention of the ultimate purchaser." *Greene v. Hellman*, 412 N.E.2d 1301, 1307 (N.Y. 1980). Instead, to establish a right to a commission, "there must be a direct and proximate link, as distinguished from one that is indirect and remote, between the bare introduction and the consummation." *Id.* at 206; *see also Parker Realty*, 929 N.E.3d at 866. Douglas Elliman concedes that it had no contact with Defendants after February 2017; accordingly, it plainly was not the "procuring cause of the sale."

2

'the amount can[not] be determined objectively without the need for new expressions by the parties.'" *Stone Key Partners LLC v. Monster Worldwide, Inc.*, 333 F. Supp. 3d 316, 334 (S.D.N.Y. 2018) (quoting *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 548 N.E.2d 203, 207 (N.Y. 1989)). Compensation may be calculated "with reference to industry standards or customs," but in that case "the plaintiff must establish that the omitted term is fixed and invariable in the industry in question." *Id.* (internal quotation marks omitted).

Applying those standards here, Douglas Elliman's claims fail for want of an enforceable contract. Notably, although 153 Franklin Street sold for $18 million, the transaction involved a celebrity client, and Douglas Elliman claims entitlement to a seven-figure commission, it cannot point to any formal agreement with Defendants. Instead, Douglas Elliman's sole alleged contract with Firefly and 13 Management LLC was an informal email from an employee of Defendants to the agent, which stated in full:

> This email is intended for your use with the owner of 153 Franklin. This is to confirm that we Firefly Entertainment/13 Management are working with you solely regarding the viewing and any other needs at 153 Franklin. There will not be any other lines of communication outside of myself. Thank you and please let me know if you need anything further.

Compl. Ex. A; *see* Compl. ¶ 7 ("The promise is contained within the four corners of the email."); Pl.'s Mem. 2 ("The contract arises from the pled written promise . . . sent via email."). But those words do not come close to establishing that Firefly and 13 Management LLC agreed to use Douglas Elliman as an exclusive agent for the purchase of 153 Franklin Street, let alone that they agreed to pay the company a seven-figure commission in the event that they purchased the property without regard for whether the company's agent provided any assistance in the transaction. The email says nothing about the purchase of 153 Franklin Street; indeed, the only task that it mentions with specificity is a "viewing" of the property and, even as to that task, the email is no more than "a promise to 'work together.'" *Vacold LLC v. Cerami*, 545 F.3d 114, 125

(2d Cir. 2008); *cf. Morpheus Capital Advisors LLC v. UBS AG*, 15 N.E.3d 1187, 1192 (N.Y. 2014) ("[A] contract giving rise to an exclusive right of sale must clearly and expressly provide that a commission is due upon sale by the owner or exclude the owner from independently negotiating a sale." (internal quotation marks and alterations omitted)). And the email is far from the sort of "formal writing" one would expect in connection with an $18 million transaction. *See Brown v. Cara*, 420 F.3d 148, 155-56 (2d Cir. 2005).

In any event, to the extent that the email could reasonably be construed as an agreement with respect to the purchase of 153 Franklin Street, it is nothing more than an unenforceable agreement to agree. The email lacks most, if not all, of the material terms of a real estate brokerage agreement, including the scope and duration of the relationship and the fee. *See, e.g.*, *Hirschfeld Props.*, 3 A.D.3d at 399 (affirming dismissal of an action to enforce a real estate brokerage agreement on the ground that "[t]he writing between the parties on which plaintiff relies" was "not a valid real estate brokerage agreement" because it did not include a payment term); *Parkway Grp., Ltd. v. Modell's Sporting Goods*, 254 A.D.2d 338, 339 (2d Dep't 1998) ("Even if the agreement had created an exclusive agency, the broker would not be entitled to a commission because the agreement . . . lacked an essential term as to the amount of the commission and constituted an unenforceable agreement to agree."). Most significantly, the email "contains no methodology, formula, or external measure by which the Court might objectively determine the compensation to be paid." *GEM Advisors, Inc. v. Corporación Sidenor, S.A.*, 667 F. Supp. 2d 308, 326 (S.D.N.Y. 2009). Douglas Elliman does allege that a six percent commission is the "customary real estate brokerage commission paid on sale of like high end real property in the subject location." Compl. ¶ 14. But far from helping Douglas Elliman, that allegation is fatal to its claim that the email constitutes an enforceable contract, as it is a tacit

4

admission that there is no "fixed and invariable standard" for calculating commissions; to the contrary, it establishes that the calculation of a commission is dependent on subjective assessments such as neighborhood and whether the property at issue qualifies as "high end" or not. *Stone Key*, 333 F. Supp. 3d at 336 (holding that a contract was unenforceable where, at best, it called for a means of fixing a fee that "entail[ed] a host of subjective choices"); *see also Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*, 181 A.D.2d 551, 552 (1st Dep't 1992) ("As no objective method or formula was provided for determining a commission, the exclusive sales contract was merely an agreement to agree and was unenforceable.").

The Court has considered all of Douglas Elliman's other arguments against dismissal and finds them to be without merit. Thus, even accepting the facts alleged in the Complaint as true and drawing all reasonable inferences in favor of the non-moving party, *see, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam), the Court concludes that Douglas Elliman's claims fail as a matter of law for want of an enforceable contract, *see, e.g.*, *Vacold*, 545 F.3d at 123 ("Under New York law, whether a binding agreement exists is a legal issue, not a factual one."). Accordingly, Defendants' motion to dismiss is **GRANTED**, and the Complaint is dismissed in its entirety.

Moreover, the Court declines to grant Douglas Elliman leave to amend its Complaint. It declines to do so because Doulas Elliman has not requested such leave, *see, e.g.*, *Ritchie Capital Mgmt., LLC v. Gen. Elec. Capital Corp.*, 821 F.3d 349, 351-52 (2d Cir. 2016) (per curiam); because any amendment would plainly be futile, *see Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); and because the Court previously gave Douglas Elliman notice of one final "opportunity to amend the Complaint to address issues raised by the motion to dismiss," Docket No. 14, but Douglas Elliman declined to do so.

The Clerk of Court is directed to terminate Docket No. 12 and to close the case.

SO ORDERED.

Dated: January 24, 2019
New York, New York

JESSE M. FURMAN
United States District Judge