**MANDATE**

N.Y.S.D. Case # 18-cv-1381(JMF)

19-0279
*Douglas Elliman LLC v. Firefly Entertainment Inc., 13 Management LLC, Euro Tribeca LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of November, two thousand nineteen.

PRESENT: ROBERT D. SACK,
                PETER W. HALL,
                     *Circuit Judges*,
                JED S. RAKOFF,*
                     *District Judge*.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Dec 17 2019

_____

Douglas Elliman LLC,

      *Plaintiff-Appellant*,

      v.                                    19-0279

Firefly Entertainment Inc., 13 Management LLC,
Euro Tribeca LLC,

_____

\* Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

**MANDATE ISSUED ON 12/17/2019**

*Defendants-Appellees.*

_____

| | |
|---|---|
| For Appellant: | MICHAEL S. COLE, Cole Hansen Chester LLP, New York, New York. |
| For Appellee: | J. DOUGLAS BALDRIDGE, Venable LLP, Washington, D.C., John C. Vazquez, Venable LLP, New York, New York. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Furman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Douglas Elliman LLC ("Elliman") appeals from a judgment of the United States District Court for the Southern District of New York (Furman, *J.*) entered on January 24, 2019, dismissing its complaint. Appellant brought this action against Firefly Entertainment Inc., 13 Management LLC, and Euro Tribeca LLC seeking damages for breach of contract and tortious interference with contract. The district court dismissed the complaint pursuant to Fed. R. Civ. P. 12(b)(6). We assume the parties' familiarity with the underlying facts, the record of prior

2

proceedings, and arguments on appeal, which we reference only as necessary to explain our decision to affirm.

I.

The following facts are drawn from the allegations in the complaint, which we assume to be true. *See Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). In December of 2016, Appellees Firefly Entertainment Inc. and 13 Management LLC (together "Firefly/13") approached real estate agent Andrew Azoulay, associated with Elliman, and expressed interest in potentially purchasing a property for which Azoulay was the listing agent. A celebrity, on whose behalf Firefly/13 was acting, desired a building with internal access to a garage, and Azoulay proposed that another nearby property would suit her needs. Azoulay then showed the property to Firefly/13, measured the building using a laser device, introduced the agents to the owner of the building, obtained the blueprints for the building, provided them to Firefly/13, and engaged in preliminary negotiations with the owner of the property regarding a potential purchase. Azoulay's activities span, at most, two months from "[o]n or about January 2017" when Azoulay introduced Firefly/13 to the property until "[o]n or after March 2017" when he received no further substantive contact from Firefly/13. J. App. at

3

20, 22. Before Azoulay showed the property to Firefly/13, a representative of Firefly/13 sent an email to Azoulay saying:

> Andrew,
>
> This email is intended for your use with the owner of 153 Franklin. This is to confirm that we Firefly Entertainment/13 Management are working with you solely regarding the viewing and any other needs at 153 Franklin.   There will not be any other lines of communication outside of myself.   Thank you and please let me know if you need anything further.

J. App. at 29.   On or about October 25, 2017, the celebrity purchased the property through her corporate entity Euro Tribeca LLC.   Another real estate broker closed the transaction and received a commission.

Elliman asserts that the e-mail from Firefly/13 was an "unambiguous written promise of sole right to represent the [celebrity] as buyer regarding" the property.   J. App. at 17-18.   Elliman further asserts Firefly/13 breached this promise by excluding Azoulay from the sale transaction relating to the property and that as a result Elliman received no real estate brokerage commission on the sale.   Elliman claims it is thus entitled to damages in the amount of $1,080,000, which is six percent of the believed purchase price of $18,000,000, or in "that amount which the proof shall show as the actual real

4

estate brokerage commission paid on sale of" the property. J. App. at 19-20. Elliman also alleges that Euro Tribeca LLC was incorporated in order to purchase the property and to prevent Elliman from learning that the celebrity purchased the property, and Euro Tribeca LLC therefore facilitated the breach of promise and intentionally and tortuously interfered with said promise. On this count, Appellants seek $1,080,000, or the actual commission paid on purchase, from Euro Tribeca LLC.

II.

"We review *de novo* a grant of a motion to dismiss pursuant to Rule 12(b)(6), accepting the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 898 F.3d 232, 236 (2d Cir. 2018) (internal quotation marks omitted).

III.

Applying New York law, the district court held that Elliman's claims failed "for want of an enforceable contract," rejecting the argument that the email constituted an exclusive agency agreement because it lacks "most, if not all, of the

5

material terms of a real estate brokerage agreement, including the scope and duration of the relationship and the fee." JA 80-81.

On appeal, Elliman argues that the e-mail was a contract, notwithstanding the fact that it lacked material terms such as commission and period of validity. It contends that it was unnecessary for the e-mail to contain these terms explicitly in order to constitute an enforceable contract because, under New York law: (1) a commission can be excluded from the agreement if there is an objective extrinsic measure (such as a customary commission rate) and (2) where an agreement does not set an explicit time limit for performance, the law will imply a reasonable one. Appellees argue that when a real estate broker is not the "procuring cause" of a consummated real estate transaction, he may only recover the reasonable value of his services if there is an express, enforceable agreement. Appellees contend that because Elliman did not allege facts sufficient to support such an agreement, it cannot make out an entitlement to damages.

Under New York law, a contract must be "reasonably certain in its material terms" in order to be legally enforceable. *Arbitron, Inc. v. Tralyn Broad., Inc.*, 400 F.3d 130, 136 (2d Cir. 2005); *see also Express Indus. & Terminal Corp. v. N.Y. Dep't of Transp.*, 93 N.Y.2d 584, 589 (1999) ("To create a binding contract, there must be a

6

manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms") (citation omitted). New York courts have held that an exclusive agency agreement which lacks "an essential term as to the amount of the commission" constitutes an unenforceable agreement to agree. *Parkway Grp., Ltd. v. Modell's Sporting Goods*, 254 A.D.2d 338, 339 (2d Dept. 1998); *see also Cooper Square Realty, Inc. v. A.R.S. Mgmt., Ltd.*, 181 A.D.2d 551, 551 (1st Dept. 1992) ("As price is an essential ingredient of every contract for the rendering of services, an agreement must be definite as to compensation.").

It is undisputed that the alleged contract is missing a material term for the commission amount, but in some scenarios, this is not fatal to the existence of an enforceable contract. New York courts have not always applied the definiteness doctrine rigidly, and "where it is clear from the language of an agreement that the parties intended to be bound and there exists an objective method for supplying a missing term, [a] court should endeavor to hold the parties to their bargain." *In the Matter of 166 Mamaroneck Ave. Corp. v. 151 E. Post Rd. Corp.*, 78 N.Y.2d 88, 91 (1991). For example, "a price term is not necessarily indefinite because the agreement fails to specify a dollar figure, or leaves fixing the amount for the future,

7

or contains no computational formula. Where at the time of agreement the parties have manifested their intent to be bound, a price term may be sufficiently definite if the amount can be determined objectively without the need for new expressions by the parties; a method for reducing uncertainty to certainty might, for example, be found within the agreement or ascertained by reference to an extrinsic event, commercial practice or trade usage." *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483 (1989); *see also Parkway Grp., Ltd.*, 254 A.D.2d at 339 (even if letter agreement created exclusive agency, broker would not be entitled to a commission where agreement provided for a commission "at a rate to be negotiated" and therefore lacked an essential term and constituted an unenforceable agreement to agree). The "two ways in which the requirement of definiteness could be satisfied in the absence of an explicit contract term" identified by the New York Court of Appeals are: "(1) an agreement could contain a methodology for determining the missing term within the four corners of the lease, for a term so arrived at would have been the end product of agreement between the parties themselves; or (2) an agreement could invite recourse to an objective extrinsic event, condition or standard on which the amount was made to depend." *166 Mamaroneck Avenue Corp.*, 78 N.Y.2d at 91-92 (internal quotation

8

marks, alterations, and citation omitted); *see also Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 111 (1981) (contract language speaking only to "annual rentals to be agreed upon" left "no room for legal construction or resolution of ambiguity").

Here, however, we decline Appellant's invitation to rewrite an otherwise unenforceable agreement by reading in essential terms where there is no indication that the parties intended to be bound by an exclusive agency agreement. First, the entire "agreement" is so indefinite that it is not at all clear the parties were intending to enter into an exclusive agency agreement in the first instance. The four-sentence e-mail does not reference an exclusive agency agreement, nor does it allude to any terms that are typically found in a contract, such as commission, duration, routes to termination, the name of a potential buyer, or remedies in the case of breach.[1]   And even if there was sufficient intent shown to support a finding of an enforceable contract, it would be inappropriate to read in

---

[1] Appellant points to *Lansco Corp. v. NY Brauser Realty Corp.*, 63 A.D.3d 513 (1st Dept. 2009), for what it describes as "controlling New York authority on point" for the proposition that a letter agreement may be enforceable in the absence of material terms. Reply Br. at 2.   This case contains almost no analysis regarding the absence of material terms and has only been cited in four cases, all for a different proposition.

9

missing terms here, as there is no "invit[ation to] recourse to an objective . . . standard," *166 Mamaroneck Avenue Corp.*, 78 N.Y.2d at 92, or "reference to . . . commercial practice or trade usage" in the e-mail, *Cobble Hill Nursing Home, Inc.*, 74 N.Y.2d at 483.

"[B]efore the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained;" in the absence of such certainty, we will not "impos[e our] own conception of what the parties should or might have undertaken." *Joseph Martin, Jr.*, 52 N.Y.2d at 109.

Because Appellant has not pled facts that can give rise to an enforceable contract, the claims it raised in its complaint – breach of contract and tortious interference with contract – fail as a matter of law.

\* \* \*

We have considered Appellant's remaining arguments and find them to be without merit. We hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

10